IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| SHANDESTRIA HAWKINS, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Case No.: 20-cv-0084 |
| | * | |
| PHOENIX SERVICES, LLC and | * | JURY TRIAL DEMANDED |
| METAL SERVICES, LLC, d/b/a PHOENIX | * | |
| INPLANT SERVICES, LLC and/or PHOENIX | * | |
| SERVICES, LLC, | * | |
| | * | |
| Defendants. | * | |

## COMPLAINT

COMES NOW, Plaintiff, Shandestria Hawkins, in the above styled matter, and files this Complaint against Defendants, Phoenix Services, LLC, and Metal Services, LLC, d/b/a Phoenix InPlant Services, LLC and/or Phoenix Services, LLC, for causes of action and would respectfully show the following:

1.  This is an action for declaratory judgment, equitable relief, and money damages, instituted to secure the protection of and to redress the deprivation of rights secured through the state laws of Alabama, for assault, battery, and related causes of action, and the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601, *et seq.*, in interference with and in retaliation for the Plaintiff asserting her rights under 29 U.S.C. § 2601, *et seq*. The Plaintiff requests a jury trial pursuant to 42 U.S.C. § 1981a.

## JURISDICTION AND VENUE

2.  This Court has jurisdiction in accordance with 28 U.S.C. § 1331 and 29 U.S.C. § 2617. The Court's supplemental jurisdiction is invoked, pursuant to 28 U.S.C. § 1367(a), over

the related state law claims forming part of this same case and controversy.

3. The unlawful employment practices alleged herein were committed by the Defendants within Mobile and/or Washington County, Alabama.

4. Venue is proper pursuant to 28 U.S.C. § 1391.

**PARTIES**

5. Plaintiff, Shandestria Hawkins (hereinafter "Plaintiff" or "Hawkins"), is a female citizen of the United States, a resident of the State of Alabama, and a former employee of Defendants, Phoenix Services, LLC and Metal Services, LLC in its Calvert, Alabama location.

6. Plaintiff was an eligible employee under the FMLA in that she worked for the Defendants for more than 12 months and had worked more than 1250 hours of service within the preceding 12 months and had worked at a location where at least 50 employees were employed within 75 miles of Plaintiff's worksite.

7. Defendant, Phoenix Services, LLC (hereinafter "Defendant" or "Phoenix") is a foreign corporation based in Pennsylvania and offering steel mill services in Calvert, Alabama, where it employs 50 or more employees, and elsewhere around the world. The Defendant employed 50 or more employees for each working day during each of the 20 or more calendar work weeks in the applicable calendar year.

8. Defendant, Metal Services, LLC, d/b/a Phoenix InPlant Services, LLC and/or Phoenix Services, LLC (hereinafter "Defendant," or "Metal Services," or collectively with Phoenix Services, LLC, "Defendant" or "Phoenix"), is a foreign corporation operating based in Pennsylvania and offering steel mill services in Calvert, Alabama, where it employs 50 or more employees, and elsewhere around the world. The Defendant employed 50 or more employees for

2

each working day during each of the 20 or more calendar work weeks in the applicable calendar year.  Upon information and belief, Defendant Metal Services, LLC, acquired Defendant Phoenix Services, LLC at some point during Ms. Hawkins' employment and continued operating under the trade name of Phoenix Services.

## FACTUAL ALLEGATIONS

9.      Plaintiff Hawkins worked for Defendants as an Inventory Associate from January 30, 2017 until February 12, 2019.

10.     In the spring of 2017, Hawkins' supervisor, Darrell Bethune, physically grabbed Plaintiff and pinned her against a fence, while she shouted at him to stop.  This was witnessed by several Phoenix employees.  On other occasions in 2017, Bethune grabbed Hawkins on her arms, breasts, and waist, while Plaintiff protested. These incidents were also witnessed by Phoenix employees, including at least one supervisor.

11.     On or about February 27, 2018, Darrell Bethune, came to the inventory trailer where Hawkins was working alone and raped her.

12.     Within days, Hawkins reported the sexual assault to Bethune's supervisor, Operations Manager Frank Harris.  Harris interrupted Hawkins as she told him that she could no longer work with Bethune and that he refused to take "no" for an answer.  Harris seemed uninterested in hearing the whole story of what happened.

13.     Nevertheless, the day following Hawkins' report to Harris, Bethune stated in a meeting words to the effect of, "some MF called corporate," "we'll see how this works," and mentioned "snitch" or "snitching."  He also mentioned making it "hell" for employees in inventory.

3

14. Because her complaint to Harris was not elevated and was already resulting in retaliatory behavior by Bethune, Hawkins next reported the assault to Phoenix Service's Human Resources representative Gail (LNU). Gail indicated she would investigate.

15. Frank Harris became aware that Hawkins had complained to Human Resources and was angry with Hawkins for taking it "out of [his] hands."

16. Hawkins was forced to continue working with Bethune while her complaint was investigated.

17. Gail ultimately reported back to Hawkins that the resolution of her complaint would be that Bethune would not bother her anymore. Bethune was promoted to a better position, received an increase in salary, a better schedule, and a company vehicle.

18. In the aftermath of the assault, Hawkins requested one or two weeks' leave without pay. Gail and Frank Harris both denied her request.

19. Frank Harris later apologized to Hawkins, telling her that he knew what Bethune did was wrong.

20. After her complaint and Bethune's subsequent promotion, Bethune would walk by Hawkins and whisper, "untouchable." Hawkins understood that Bethune was taunting her, conveying that her complaint and his actions had only benefited him.

21. Prior to Bethune's attacks on Ms. Hawkins, Bethune was known to Defendants to be a frequent harasser of women. Upon information and belief, multiple women had complained about his unwanted advances and overtures. Additionally, employees and supervisors had witnessed his open and notorious sexual harassment of women in the Phoenix workplace.

22. Upon information and belief, for some period prior to Ms. Hawkins' transfer to his

team (which occurred at Mr. Bethune's explicit request), and due to these prior complaints, Bethune was prohibited from directly supervising female employees.

23.   On December 12, 2018, Ms. Hawkins was placed on medical leave due to complications from medical conditions including intestinal inflammation, infection, and ileitis. These conditions affect her health and functioning, are chronic and require periodic continuous treatment.  The treatment sometimes requires inpatient stays, and the conditions can intermittently result in incapacity for periods longer than three days.

24.   Ms. Hawkins was hospitalized from December 12-16, 2018.  Once released from the hospital, she remained under the care of a doctor and underwent additional testing, evaluation, and treatment until February 12, 2019, when she was finally cleared to return to work.

25.   Ms. Hawkins applied for and was granted FMLA leave by Phoenix.  She remained in close contact with her employer, updating Phoenix on the progress of her treatment and her anticipated return to work date.  Ultimately, she was cleared to return on February 12, 2019, and communicated this fact, with the supporting medical documentation, to Defendants.

26.   On February 12, 2019, Ms. Hawkins attempted to return to work.

27.   On February 12, 2019, Ms. Hawkins was terminated due to alleged discrepancies in her return-to work paperwork.

28.   Ms. Hawkins' FMLA paperwork, as far as she was aware, was fully compliant with Defendants' policies and reflected the needed leave taken.

29.   As such, the articulated reason for Ms. Hawkins' termination was pretext for retaliation against Ms. Hawkins for her use of FMLA leave.

30. Defendants' termination of Ms. Hawkins' employment and their refusal to reinstate her interfered with Ms. Hawkins' rights guaranteed under the FMLA.

31. As the result of the Defendants' conduct, Ms. Hawkins was deprived of income and other benefits due her. She also suffered embarrassment, humiliation, inconvenience, and severe mental distress.

32. Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged herein, and this suit for a declaratory judgment, backpay with interest, an injunction, and liquidated, compensatory, and punitive damages is her only means of securing adequate relief.

33. Plaintiff is suffering and will continue to suffer irreparable injury from the Defendants' unlawful conduct as set forth herein unless enjoined by this Court.

## COUNT I

### INTERFERENCE AND RETALIATION IN VIOLATION OF THE FAMILY MEDICAL LEAVE ACT OF 1993

34. Plaintiff realleges and incorporates by reference paragraphs 1 through 33 above with the same force and effect as if fully set out in specific detail herein.

35. As set forth herein, Plaintiff was an eligible employee under the FMLA in that she worked for Defendants more than 12 months, had worked more than 1250 hours of service within the preceding 12 months, and had worked at a location where at least 50 employees were employed within a 75-mile radius.

36. As a result of her medical conditions, Plaintiff requested medical leave from the Defendants.

37. Defendant approved Plaintiff's requested leave.

38. Because of her use of approved FMLA leave, Defendant retaliated against Plaintiff,

as set out herein.

39. As set out herein, Defendant interfered with Plaintiff's rights under the FMLA by refusing to reinstate her.

40. In retaliation for exercising her rights under the FMLA, the Defendant subjected the Plaintiff to unlawful employment actions including, but not limited to, terminating her employment.

41. The Defendants intentionally, maliciously, and with reckless indifference interfered with Plaintiff's rights under the FMLA and retaliated against the Plaintiff in the terms, conditions, and benefits of her employment including, but not limited to, refusing to restore Plaintiff to the same or equivalent job upon returning from her FMLA leave and/or by terminating her employment.

42. The Plaintiff seeks to redress the wrongs alleged herein in this suit for lost wages, lost benefits, an injunction, a declaratory judgment, compensatory damages, liquidated damages, attorneys' fees, costs, and expenses. The Plaintiff is now suffering and will continue to suffer irreparable injury from the Defendants' unlawful policies and practices as set forth herein unless enjoined by this Court.

## COUNT II

## ASSAULT AND BATTERY

43. Plaintiff hereby adopts and incorporates by reference Paragraphs 1 through 42 as fully set forth herein.

44. This is a claim arising under the laws of the State of Alabama to redress Darrell Bethune's assault and battery against the Plaintiff and the ratification of that conduct by Defendants.

45. Darrell Bethune tortiously assaulted and battered Plaintiff by intentionally subjecting her to harmful, rude, and unwanted touching as described above. These acts were participated in, condoned, authorized, and/or ratified by the Defendants. Defendants also had actual and/or constructive knowledge of Bethune's tortious conduct and failed to take adequate steps to remedy the situation. Defendants are directly liable for the acts of their agent, Bethune.

46. As a direct and proximate result, Plaintiff has suffered extreme harm, including great emotional distress, for which she claims compensatory and punitive damages from the Defendants.

## COUNT THREE

## OUTRAGE/INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

47. Plaintiff hereby adopts and incorporates by reference Paragraphs 1 through 46 as fully set forth herein.

48. This is a claim arising under the laws of the State of Alabama to redress Bethune's outrageous conduct directed at the Plaintiff and the ratification of that conduct by Defendants.

49. Darrell Bethune and Defendants tortiously, wantonly, intentionally, and/or recklessly inflicted emotional distress on Plaintiff as set forth above. Their conduct was extreme, outrageous, and beyond the boundaries of decency in civilized society. These acts were participated in, condoned, authorized, and/or ratified by the Defendants. Defendants also had

actual and/or constructive knowledge of the outrageous conduct and failed to take adequate steps to remedy the situation.  Defendants are directly liable for the acts of their agent, Bethune.

50.     Defendants' conduct was extreme and outrageous and caused Plaintiff emotional distress so severe that no reasonable person could be expected to endure it.  As a direct and proximate result, Plaintiff has suffered extreme harm, including great emotional distress, for which she claims compensatory and punitive damages.

## COUNT FOUR

## INVASION OF PRIVACY

51.     Plaintiff hereby adopts and incorporates by reference Paragraphs 1 through 50 as fully set forth herein.

52.     This is a claim arising under the laws of the State of Alabama to redress violations by Darrell Bethune of the Plaintiff's right to privacy and the ratification of that conduct by Defendants.

53.     Defendants and Bethune intentionally and unlawfully intruded upon the Plaintiff's physical solicitude or seclusion as set forth above.  These acts were participated in, authorized, condoned, and/or ratified by the Defendants.  Defendants also had actual and/or constructive knowledge of the tortious conduct and failed to take adequate steps to remedy the situation.  Defendants are directly liable for the acts of their agent, Bethune.

54.     As a direct and proximate result, Plaintiff suffered extreme harm, including great emotional distress, for which she claims compensatory and punitive damages.

## COUNT FIVE

## NEGLIGENT AND/OR WANTON TRAINING, SUPERVISION, AND RETENTION

55. Plaintiff hereby adopts and incorporates by reference Paragraphs 1 through 54 as fully set forth herein.

56. This is a claim arising under the law of the State of Alabama to redress the negligent and/or wanton supervision, training, and retention of the employees responsible for the tortious and/or unlawful acts as set forth above by the Defendants and Bethune.

57. Defendants negligently and/or wantonly failed to train and supervise their employees, proximately causing the severe harm suffered by Plaintiff.  Defendants negligently and/or wantonly retained and failed to train and/or adequately supervise the offending employees after actual and/or constructive knowledge of their tortious and/or unlawful acts.

58. As a direct and proximate result, Plaintiff has suffered extreme harm, including great emotional distress, for which she seeks compensatory and punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully prays that this Court assume jurisdiction of this action and after trial:

1. Issue a declaratory judgment that the employment policies, practices, procedures, conditions and customs of the Defendants are violative of the rights of the Plaintiff, as secured by the state laws of Alabama and the Family and Medical Leave Act of 1993;

2. Grant Plaintiff a preliminary and permanent injunction enjoining the Defendants, their agents, successors, employees, attorneys, and those acting in concert with the Defendants and at the Defendants' request, from continuing to violate the laws of Alabama and the Family and

Medical Leave Act of 1993;

      3.      Grant the Plaintiff an order requiring the Defendants to make her whole by awarding her instatement into the position she would have occupied in the absence of the unlawful acts by the Defendants with the same seniority, leave and other benefits of the position (or front pay), back pay (with interest), and by awarding each liquidated, compensatory, punitive, and/or nominal damages, attorney's fees, costs, and expenses;

      4.      Grant Plaintiff a preliminary and permanent injunction pursuant to 29 U.S.C. §2617(1)(B) directing the Defendants to reinstate all of Plaintiff's employment benefits, including but not limited to her health insurance and retirement benefits, retroactive to the date of their cessation;

      5.      Enter a judgment pursuant to 29 U.S.C. §2617(a)(1)(A)(i)(II) against the Defendants and in favor of the Plaintiff for the monetary losses Plaintiff sustained as a direct result of the Defendants' termination of Plaintiff in violation of the FMLA; and

      6.      Any and all other and different relief that she may be entitled and as justice requires.

**THE PLAINTIFF DEMANDS TRIAL BY JURY.**

Respectfully Submitted this 13th day of February, 2020:

*/s/Abby M. Richardson*
Abby M. Richardson (RICHA3209)
**RICHARDSON LAW FIRM, LLC**
118 North Royal Street
Suite 100
Mobile, Alabama 36602
251-338-1695
abby@richardsonlawllc.com

*Counsel for Plaintiff*